IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WALTER RUPPRECHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-01260 (AJT/JFA) |
| ) | |
| RELIANCE STANDARD LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Walter "Sonny" Rupprecht ("Plaintiff" or "Rupprecht") and Reliance Standard Life Insurance Company ("Reliance" or "Defendant") have filed cross-motions for summary judgment (each respectively "Plaintiff's Motion" and "Defendant's Motion"; collectively the "Motions") with respect to Plaintiff's claim for long term disability benefits under Reliance's employee benefits plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), codified as amended at 29 U.S.C. §§ 1001, *et seq*. Based on the following, the Plaintiff's Motion for Summary Judgment is **GRANTED**, [Doc. No. 9], and the Defendant's Motion is **DENIED**, [Doc. No. 7].

### I. BACKGROUND

Reliance provided group long term disability insurance (the "Plan") to Plaintiff and others through his employment with Sharp Electronics Corporation ("Sharp").[1] [Doc. No. 8-1] ("Administrative Record" or "AR") at 1-36 (text of the Plan). Plaintiff was injured in November 2017 in a work-related accident and subsequently filed claim for disability benefits. *Id.* at 140.

---

[1] This background is based on the administrative record rather than the statements of undisputed material facts contemplated under local rule 56 (B).

It appears his initial request[2] for Long Term Disability (LTD) benefits was delayed and initially denied due to an error on behalf of his employer.  AR at 140-44 (original denials), 209-30.[3] Reliance reversed the denial on July 21, 2020, *id.* at 145 (reversal), and referred the claim to its Long Term Disability department.  *Id.* at 145.  This letter advised Plaintiff that he "may be required to provide Reliance [] periodic proof of continuing Total Disability and . . . may be required to undergo an Independent Medical Evaluation . . . ."  AR 145.  On September 14, 2020, the Long Term Disabilities Department then approved his claim, providing him benefits from May 27, 2018 through February 27, 2020.[4]  *Id.* at 159-60.  But beyond 24 months, *i.e.*, after May 27, 2020, the letter informed Plaintiff that he "must be totally disabled from performing the material duties of Any Occupation."  *Id.*  Reliance informed him that "[a]n investigation will begin prior to this date in order to gather the necessary information to determine your continued eligibility for LTD benefits."  *Id.* at 160.

On October 12, 2020, Plaintiff was advised his benefits were being terminated because Matrix (the claim administrator) did not receive the necessary and requested information from Plaintiff's doctors.  *Id.* at 163.  Matrix informed Plaintiff that it notified Plaintiff it needed this information on July 23, 2020, August 25, 2020, and September 11, 2020.  *Id.*  Matrix also informed Plaintiff that if the medical records were received within 180 days, it could continue to process his request.  *Id.* at 164.  Plaintiff subsequently provided this information to Matrix in February 2021, including a medical diagnosis from Dr. Yu stating Plaintiff "remained permanently disabled" based on a November 3, 2020 doctor visit.  *Id.* at 513, 516-17.  Dr. Yu

---

[2] In his request, Plaintiff provided statements by his primary care physician, Dr. Ashvan Patel, and his orthopedic surgeon, Dr. Warren Yu.  *See id.* at 184-91.  Plaintiff stopped seeing Dr. Patel in 2019 "due to a change in health insurance coverage."  *Id.* at 514.
[3] Plaintiff also settled a workers' compensation case in March 2020.  *See id.* at 522-28.
[4] The period of November 28, 2017 through May 27, 2018 was considered to be the "Elimination Period" after which benefits commence and "are payable monthly in arrears."  *Id.* at 217.

also stated that Plaintiff experienced "significant chronic pain" and was directed to "avoid prolonged sitting and standing to help control the pain." *Id*.  In Dr. Yu's opinion, Plaintiff's condition was not expected to improve and surgery was not an option. *Id.*  Plaintiff appears to have previously provided medical diagnoses from Dr. Patel to Matrix, stating in the February 2021 letter that "[t]here are no *updated* records to send from" him. *Id.*  Dr. Patel filled out a Reliance "attending physician" form on May 16, 2019 stating that Plaintiff could not perform 1-3 hours of standing, sitting, walking or driving in an eight-hour period, even with two breaks and lunch and really could not perform these activities "at all." *Id.* at 184-85.

On May 27, 2021, after receiving the requested information, Reliance informed Plaintiff that it reviewed his file and determined that he no longer met the definition of Total Disability according to his employer's group policy ("May 2021 Letter") and so terminated benefits after May 27, 2020, *i.e.* after 24 months and the elimination period. *Id.* at 166.  Specifically, the letter pointed to the language of Sharp's policy that for the first 24 months, an individual had to be unable to perform *his or her* regular occupation but that after 24 months, the standard for total disability meant that the insured cannot perform "the material duties of *Any* Occupation." *Id.* at 167 (emphasis added).  The letter noted that based on Matrix's vocational staff's review of all Plaintiff's available medical information and information on his education, training, and experience, he was able to perform and would qualify for a number of "sedentary" positions including, for example, an informational clerk role. *Id.* at 167; *see also* 532-41 (residual employability analysis).  The corresponding analysis by nurse Renee Phillips states that Plaintiff would be capable of performing a variety of "sedentary" position in which he was "[m]ostly sitting." *Id.* at 536-41.  This formed the basis of the subsequent April 2021 review by Matthew

3

Bolks who was the "Senior Vocational Rehabilitation Specialist." *Id.* at 532-33. The May 2021 letter informed Plaintiff that he could request a review of the decision. *Id.* at 167-68.

Plaintiff appealed the decision on September 20, 2021, citing the May 2021 Letter's failure to specify why Plaintiff was being denied benefits and claiming the vocational review was flatly contradicted by the submitted opinions of Plaintiff's treating physicians and did not explain to him what information would be needed on appeal to "perfect the decision" as required under law. *Id.* at 545-77.

In response to his appeal, Reliance stated in an October 14, 2021 letter that it received Plaintiff's appeal[5] and after review, determined Plaintiff would need to undergo an independent medical examination "prior to the close of [Reliance's] review." *Id.* at 170. The October 2021 letter also informed Plaintiff that Reliance would take beyond the 45-day appeal period, which was set to conclude on November 4, 2021, because it needed to "await the completion of the above-mentioned IME and/or the receipt of above requested information." *Id.* at 171. Reliance stated that it was allowed the additional 45 days whenever "circumstances do not permit us to make a final determination in the initial . . . time frame allotted." *Id.* at 171.

Plaintiff responded to the letter on November 1, 2021 asking for all future correspondence to be faxed. *Id.* at 603-06. Plaintiff objected to Reliance taking an additional 45 days to render a decision, stating that scheduling an IME after a denial of benefits was not permitted by law and, as such, Plaintiff would not undergo an IME.[6] *Id.* at 604-06. Plaintiff further raised a variety of concerns with the chosen doctor to conduct the IME. *Id.* Reliance

---

[5] The original letter said the appeal was received on July 10, 2021 but Reliance clarified in a November 12, 2021 letter that it received the appeal on September 20, 2021. *Id.* at 173.

[6] In support of his decision not to submit to the requested IME, Plaintiff explained in his briefing that he "was suspicious that [Reliance] was simply stalling and fishing for new reasons to deny his claim" because it did not provide any justification for the IME after the appeal deadline and that his appeal would be sandbagged by after-the-fact justifications devised to validate a denial of his claim. *See* [Doc. No. 17] at 21.

4

wrote back on November 12, 2021 stating that the November 8, 2021 IME was rescheduled to December 3, 2021 due to Plaintiff's concern with the originally scheduled IME provider. *Id.* at 173. It appears Reliance mailed instead of faxed the November 12, 2021 letter. Plaintiff filed suit on November 15, 2021. [Doc. No. 1] ("Compl."). Reliance and Plaintiff both filed for summary judgment on April 15, 2022. *See* [Doc. Nos. 7, 9].

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Bouchat*, 346 F.3d at 522. To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (internal quotations and citation omitted). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

5

at 248.  The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party.  *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).  "When faced with cross-motions for summary judgment," as is the case here, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law."  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)

### III. ANALYSIS

ERISA is a "comprehensive and reticulated statute" and is "the product of a decade of congressional study of the Nation's private employee benefit system," governing most active employee benefit plans in the United States.  *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993); *see also Horton v. Life Ins. Co. of N. Am.*, No. CIV.A. ELH-14-3, 2015 WL 1469196, at *11 (D. Md. Mar. 30, 2015).  ERISA was designed to serve a number of congressional goals, including promoting "internal resolution of claims through non-adversarial and informal proceedings" as well as promoting and protecting employee's contractually defined benefits.  *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1022-23 (4th Cir. 1993) (en banc).  "A civil action may be brought 'to recover benefits due to an ERISA plan participant or beneficiary under the terms of the plan, to enforce her rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."  *Horton*, 2015 WL 1469196 at *11 (quoting 29 U.S.C. § 1132(a)(1)(B)).  In ERISA claims, the burden is on the employee to prove she is disabled through "objectively satisfactory" proof.  *Shupe v. Hartford Life & Accident Ins. Co.*, 19 F.4th 697, 707 (4th Cir. 2021).

Resolution of these cross motions for summary judgment raise four main issues for review: (1) whether Plaintiff had exhausted his administrative remedies when he filed this action while

the appeal was still ostensibly pending before Reliance; (2) if exhausted, whether the Court should analyze the case under *de novo* or abuse of discretion review; (3) which of Reliance's decisions in this case the Court should review; and (4) what relief should be awarded Plaintiff if he prevails.

**A. Appeal Period**

As an initial matter in this ERISA case, the Court must determine whether Plaintiff has timely filed this action. That issue, in turn, depends on whether he has exhausted his administrative remedies. Plaintiff contends that Reliance's failure to decide his appeal within the prescribed 45-day period constitutes an exhaustion of administrative remedies. [Doc. No. 10] at 9. Reliance contends that it properly invoked a 45-day extension and Plaintiff's failure to attend the IME amounts to failure to exhaust his administrative remedies and so dismissal, not remand, or any other relief, is appropriate. [Doc. No. 16] at 16 n.19; [Doc. No. 8] at 16 n.29; [Doc. No. 18] at 13 n.19.

Under 29 C.F.R. §2560.503-1(i)(3)(i), a claim administrator has 45 days after a claimant files an appeal and this can only be extended for an additional 45 days in "special circumstances."[7] 29 C.F.R. § 2560.503-1(i)(3)(i) ("[C]laims involving disability benefits . . . shall be governed by paragraph (i)(1)(i) of this section, except that a period of 45 days shall apply . . . .");[8] *see also*

---

[7] The 45 days also "may be tolled if the claim administrator is waiting to receive information from the claimant." *Krysztofiak*, 2021 WL 5304011, at *2.

[8] § 29 C.F.R. 2560.503-1(i)(1)(i) in turn provides
> the plan administrator shall notify a claimant in accordance with paragraph (j) of this section of the plan's benefit determination on review within a reasonable period of time, but not later than 60 days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances (such as the need to hold a hearing, if the plan's procedures provide for a hearing) require an extension of time for processing the claim. If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 60-day period. In no event shall such extension exceed a period of 60 days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review.

*Krysztofiak v. Bos. Mut. Life Ins. Co.*, No. CV DKC 19-0879, 2021 WL 5304011, at *2 (D. Md. Nov. 15, 2021). In order to qualify for an extension, a claim administrator's notice "shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review." 29 C.F.R. § 2560.503-1(i)(1)(i). If a claim administrator does not comply with the relevant deadlines, the claimant is deemed to have exhausted her administrative remedies and can file suit in federal court. *Krysztofiak*, 2021 WL 5304011, at *2; *see also Price v. UNUM Life Ins. Co. of Am.*, No. GJH-16-2037, 2018 WL 1352965, at *8 (D. Md. Mar. 14, 2018), *aff'd*, 746 F. App'x 231 (4th Cir. 2018).

Here, Reliance did not provide a decision within the first 45-day review period and did not provide the required notice for an extension. Reliance points to its October 2021 letter seeking the extension; but this letter does not provide the date by which it will make a determination, thereby making the notice inadequate. *See McFarlane v. First Unum Life Ins. Co.*, 274 F. Supp. 3d 150, 156 (The term "date" refers to the "day when an event happened or will happen.") (citing Black's Law Dictionary (10th ed. 2014)). Moreover, the timeline Reliance sets out for the rescheduled IME appears to have anticipated a decision beyond the additional 45-day window set to expire on December 13, 2021, as the rescheduled IME was set to take place on December 3, 2021, AR at 173, and Reliance reserved two weeks for the physician report to be sent to Reliance after which Reliance would then need to review it in the context of Plaintiff's case file to render a final decision, *id.* at 171. *See McFarlane*, 274 F. Supp. 3d at 156 (finding the failure to provide the date of the anticipated decision in the extension notice meant that the claim administrator very well "could [have] decide[d] her claim in 45 days or 45 months" based on the language of the notice).

Reliance has also failed to establish "special circumstances" to justify the 45-day extension. As Plaintiff correctly points out, Reliance could have scheduled this IME before denying his claim in May 2021 or within the initial 45-day appeals period. Even more problematic is that Reliance failed to explain in its letter why the medical information Reliance had already received from Plaintiff's physicians regarding Plaintiff's condition was inadequate for the purposes of deciding Plaintiff's condition as of May 2020, the time at which his LTD benefits for the 24 months ended. Similarly, Reliance provided no justification why an IME in December 2021 would assist it in determining Plaintiff's medical condition 18 months earlier.

Based on the administrative record, Reliance has failed to provide the required notice or establish the "special circumstance" that would justify a 45-day extension to decide Plaintiff's appeal and the appeal period accordingly expired on November 4, 2021 without a decision. Thus, Plaintiff is deemed to have exhausted his administrative remedies and this action is timely filed. *See Price*, 2018 WL 1352965, at *9.

**B. Standard of Review**

The parties disagree concerning the appropriate standard of review for Plaintiff's benefits application: Plaintiff contends that a *de novo* standard applies since Reliance did not exercise its discretion in denying his appeal and it merely declined to issue a decision within the appeal window. [Doc. No. 10] at 8-9. Reliance contends that because the Plan provides "discretionary authority" to it, an abuse of discretion standard applies. [Doc. No. 16] at 9.

The Court must apply a *de novo* standard unless the plan vests the administrator with discretionary authority to determine eligibility or construe the terms of the plan,[9] *see Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000); *see also Firestone Tire & Rubber*

---

[9] The Court initially determines whether the plan vests the administrator with such authority under a *de novo* standard. *Feder*, 228 F.3d at 522.

9

*Co. v. Bruch*, 489 U.S. 101, 115 (1989), and the Plan clearly confers such discretion, *see* [Doc. No. 8-1] at 17 ("The claims review has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits.").

But the analysis does not end there, as the Court must also consider whether Reliance's failure to render an decision in the appeal changes the standard of review from an abuse of discretion to *de novo*, a question that appears unsettled within the Fourth Circuit.[10]  The Circuit Courts of Appeal that have considered this issue have generally concluded in various fashions that *de novo* review applies if an appeal decision never issued as opposed to one issued belatedly. *See generally Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, No. CV ELH-17-2729, 2020 WL 1503679, at *23 (D. Md. Mar. 27, 2020) (collecting cases);[11] *see also Gritzer v. CBS, Inc.*, 275 F.3d 291, 295-96 (3d Cir. 2002) (applying *de novo* review where the claim administrator fails to issue a decision because there is "no analysis or reasoning to which the [c]ourt may defer"); *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1103 (9th Cir. 2003) ("[A] claim is "deemed . . . denied" on review after the expiration of a given time period, there is no opportunity for the exercise of discretion and the denial is usually to be reviewed *de novo*."); *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 826 (10th Cir. 2008) (applying *de novo* review when a claim administrator fails to issue *any* decision during the applicable appeal period).[12]  The Seventh Circuit has concluded that *de novo* review

---

[10] While the Fourth Circuit has not definitively decided the issue, it has observed that "[n]ot all procedural defects will invalidate a plan administrator's decisions if there is 'substantial compliance' with the regulation." *Brogan v. Holland*, 105 F.3d 158, 165 (4th Cir. 1997).

[11] *Compare with Becknell v. Severance Pay Plan of Johnson & Johnson and U.S. Affiliated Companies*, 644 F. App'x 205, 213 (3d Cir. 2016) (applying abuse of discretion to the claim administrator's tardy appeal decision and collecting similar cases).

[12] In *Hardt v. Reliance Standard Life Ins. Co.*, the Court found that abuse of discretion applied where the claim administrator filed an untimely decision on appeal.  494 F. Supp. 2d 391, 394 (E.D. Va. 2007).  In this case, by contrast, there was no ultimate decision on appeal to which the Court could defer.  *See also Fetter v. UNUM Life Ins. Co. of Am.*, No. 2:05-CV-02200-DCN, 2008 WL 11474877, at *8 (D.S.C. Mar. 21, 2008) ("Although the plan

is appropriate in any case where a decision is not issued within the appeal period, even if latter issued, explaining "when that time is up, it's up[.] . . . Substantial compliance with a deadline requiring strict compliance is a contradiction in terms." *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1004 (7th Cir. 2019) (citing § 2560.503-1(i)(1)(i))

Consistent with the above cited cases, the Court concludes that a *de novo* standard applies to its review of Plaintiff's benefits application. First, Reliance failed to make any benefits decision within the applicable appeals period or otherwise. Second, Reliance's failure to decide the application within the allotted 45 days and subsequent extension without satisfying the prescribed procedural hurdles did not constitute "minor irregularities' or "substantial compliance" with the required procedures. As the Seventh Circuit summarized with respect to Reliance's conduct in another case:

> When a plan administrator commits a procedural violation [] it loses the benefit of deference and a de novo standard applies. We have recognized an exception, though, and Reliance seeks to take advantage of it: if the administrator "substantially complies" with the prescribed procedures—in other words, if the violation is relatively minor—then the court will still defer to the administrator's decision. Reliance argues that it "substantially complied" with the deadline because it was only a little bit late. We reject Reliance's argument because we hold that the "substantial compliance" exception does not apply to blown deadlines. An administrator may be able to "substantially comply" with other procedural requirements, but a deadline is a bright line. Because Reliance violated a hard-and-fast obligation, its late decision to deny [claimant] benefits is not entitled to deference.

*Fessenden*, 927 F.3d at 999–1000.[13] Here, Reliance unilaterally granted itself the right to conduct an IME when it had ample opportunity to conduct such a review before the appeal and

---

provides for review using the abuse of discretion standard, the court concluded that defendant's failure to follow the deadlines set forth at 29 C.F.R. § 2560.201-1(f)(3) entitles plaintiff to de novo review.")

[13] Although some district courts within the Circuit have concluded as this Court has, *see Krysztofiak v. Bos. Mut. Life Ins. Co.*, No. CV DKC 19-0879, 2021 WL 5304011, at *3 n.4 (D. Md. Nov. 15, 2021) ("[S]ubstantial compliance is not possible or sufficient" because with "timeline requirements . . . meeting or missing a deadline is binary."); *Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, No. CV ELH-17-2729, 2020 WL 1503679, at *25 (D. Md. Mar. 27, 2020) (finding "*de novo* review is appropriate as to [claimant], because the violation of the deadline set out in 29 C.F.R. § 2560.503-1 was substantial, if not egregious"), other district courts have declined to

11

during the initial appeal period and failed to provide an appeal decision. *See infra* Section III.A. "[I]n the absence of a decision to which it could defer, [] the [C]ourt ha[s] no choice but to review the claim de novo." *Id.* at 1005.

*De novo* review requires the Court to "determine whether the proof of total disability he submitted to Reliance was objectively satisfactory." *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 270 (4th Cir. 2002), *as amended* (Oct. 24, 2002). "[A] court conducting *de novo* review of ERISA benefits determinations should limit its review to the evidentiary record that was presented to the plan administrator or fiduciary." *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 276 n.12 (4th Cir. 2002), *as amended* (Oct. 24, 2002) (citing *Quesinberry*, 987 F.2d 1026–27). A court reviewing an ERISA claim under *de novo* review is concerned only with the "correctness, not the reasonableness," of a denial. *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819 (4th Cir. 2013)

**C. Review of Appeal**

Having determined *de novo* review applies, the next question becomes what decision the Court should review. Plaintiff argues that Reliance's failure to issue a decision should render the appeal "deemed denied" and the Court should review Plaintiff's benefits application on its merits. [Doc. No. 17] at 15-16. The original Department of Labor ("DoL") regulations provided that an ERISA claim or appeal would be "deemed denied" if it were not decided within the allotted time period. *See Hardt*, 494 F. Supp. 2d at 393. The DoL amended the ERISA

---

apply a *de novo* standard of review where a claim administrator fails to issue a timely decision on appeal. *See Hardt*, 494 F.Supp.2d at 393-94. In *Hardt*, for example, the plaintiff did not file her complaint until after the claim administrator issued a final, albeit untimely, denial, which the court found dispositive, signaling that its analysis may well have been different had she filed her complaint before the final appeal decision. *Id.* at 394. In *Price*, 2018 WL 1352965, at *10, the plaintiff argued a *de novo* standard of review applied because the claim administrator was not entitled to a 45-day extension and failed to issue a decision within the first 45-day period. The court disagreed, applying an abuse of discretion standard because the 45-day extension was permissible, issued a decision within that window, and some of the delay was attributable to the claimant's failure to provide requested information. *Id.* at *8, *10.

regulations in 2000 for claims filed on or after January 1, 2002 and stated the claimant's claim was "deemed exhausted" once the deadline passes so the claimant can file a civil action but eliminated the "deemed denied" language.[14] *Id.* (citing 29 C.F.R. § 2560.503-1(l)). But even after the "deemed denied" language was eliminated, courts have concluded that a benefits application is "deemed denied" whenever the administrative process is "deemed exhausted." *See Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 54 (2d Cir. 2016) (concluding the DoL's interpretation of "deemed exhausted" to mean both exhausted and denied was controlling because the regulation was ambiguous and the DoL's interpretation was not "plainly erroneous or inconsistent").[15] The Court concludes that the Plaintiff's claim has been "deemed denied" and that *de novo* review is appropriate with respect to his entitlement to LTB under the "any occupation" definition of "totally disabled."

Under the Plan, "totally disabled" means that for the first 24 months, an insured is unable to "perform the material duties of his/her Regular Occupation" and then, after 24 months, an insured is unable to "perform the material duties of *Any* Occupation." AR at 11 (emphasis added). "Any Occupation" is defined by the plan is "an occupation normally performed in the national economy for which an Insured is reasonably suited based upon his/her education, training or experience." *Id.* at 10. The Plan "consider[s] the Insured Totally Disabled if due to an Injury or Sickness he or she is only capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis." (AR11). The Plan considers an insured person totally disabled after the initial 24 month period if the person "due to an injury or

---

[14] The 2018 regulations state that "the claim of appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary" for the purpose of pursuing remedies under section 502(a) of the Act," but Plaintiff stopped working on November 28, 2017 and so the Court must look at the prior regulations which stated that a claim is "deemed exhausted" instead of "deemed denied." *See* [Doc. No. 16] at 12.

[15] *Cf. Hardt*, 494 F. Supp. 2d at 394 (relying on amended 2000 DoL regulations to find "a claim is no longer deemed denied after the expiration of the regulatory deadline" because the amended regulations removed language that untimely appeals are automatically *denied* and instead incorporated deemed *exhausted*).

13

sickness [] is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis." *Id.*

Reliance's internal assessment concluded that Plaintiff was not totally disabled after the 24-month period because he could perform the material duties of some occupations such as an administrative clerk. That assessment was made by a nurse's review of Plaintiff's medical file, AR at 88, and a vocational consultant's review of Plaintiff's file, *id.* at 532. These persons concluded that Plaintiff "has at least sedentary work function" which allowed the Plaintiff to perform some occupations. *Id.* at 88. The reviewing nurse reasoned as follows:

> Clinical notes beyond November 2020 are not on file.[] Claimant has a several year history of back pain, several lumbar surgeries with most recent in April 2020.[] Notes through November 2020 indicate residual back pain with positive straight leg test and reportedly treating with pain management.[] Pain management notes are not on file. Current status of right hallux fracture is also unknown as current podiatry notes are not on file. It appears claimant has as least sedentary work function[], suggest podiatry and pain management notes for assessment of walking and standing ability.[]

AR at 88.

The only actual medical evidence in the administrative record concerning Plaintiff's condition are the opinions of his primary care physician and his orthopedic surgeon, both of whom opined that Plaintiff was totally disabled. *See* AR at 513, 516-17 (a medical diagnosis from Dr. Yu stating Plaintiff "has been disabled and permanent[ly] stationary for some time" and "remains permanently disabled" based on a November 3, 2020 visit and underlying medical record); *Id.* at 184-85 (Dr. Patel filled out a Reliance "attending physician" form on May 16, 2019 stating that Plaintiff could not perform even 1-3 hours of standing, sitting, walking or driving in an eight-hour period even with 2 breaks and lunch and, in fact, could not do any of these activities "*at [a]ll*.") (emphasis in original).

14

Based on the medical evidence and the Plan's language that Totally Disabled includes an individual that can only "perform[] the material duties on a part-time basis," the administrative record establishes that Plaintiff qualified as Totally Disabled.

**D. Relief**

The remaining issue is what remedy is appropriate. Plaintiff asks for "back benefits . . . from the day it terminated his claim to the present, and restoring him to on-claim status, subject to the terms and conditions of the LTD policy" as well as attorney's fees and costs. [Doc. No. 10] at 36. While some cases within the Fourth Circuit appear to tilt towards allowing the question of benefit eligibility to be resolved in the first instance by the plan, rather than the court,[16] the Fourth Circuit has found substantive relief appropriate where, for example, the plan administrator "relie[s] on a scintilla of evidence" in contrast to the "overwhelming evidence" concerning a plaintiff's disability. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629 634 (4th Cir. 2010) (affirming district court's award of long term disability benefits where the claimant's evidence of disability far outweighed that of the claim administrator); *Wilkinson v. Sun Life & Health Ins. Co.*, 674 F. App'x 294, 298-99 (4th Cir. 2017) (affirming district court's award of benefits). In *Garner v. Cent. States, Se. & Sw. Areas Health & Welfare Fund Active Plan*, 31 F.4th 854, 859 (4th Cir. 2022), the Fourth Circuit affirmed the district court's award of benefits—as opposed to remand to the claim administrator—where the evidence clearly showed claimant was entitled to benefits and claim administrator fumbled review three times, noting that

---

[16] *See Boyd v. Sysco Corp.*, No. 4:13-CV-00599-RBH, 2015 WL 7737966, at *10 (D.S.C. Dec. 1, 2015) (remand may cause delay, but it "fosters the strong policy favoring the internal administrative resolution of ERISA claims and ensures that plaintiff receives all of the procedural protections to which he is entitled under the regulations.") (citing *Wertheim v. Hartford Life Ins. Co.*, 268 F.Supp.2d 643, 664 (E.D.Va. 2003)); *Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1007 n. 4 (4th Cir.1985) (The question of eligibility must be "resolved by the plan in the first instance, not the court.").

"[i]t would neither encourage the careful and efficient resolution of benefits claims, nor would it be fair to Garner, to permit Central States a fourth opportunity" to review the claim.[17]

Here, Plaintiff provided ample evidence to Reliance in the form of physician opinions of his disability as of May 2020 and even six months thereafter in November 2020.[18] Reliance, on the other hand, relies on a nurse's evaluation of the medical records that is flatly inconsistent with and contradicted by the treating physician's opinions in those records as is the opinion of a vocational expert that is likewise contradicted by the treating physicians' description of the Plaintiff's limitations. More specifically, Reliance's internal Residual Employability Analysis concludes Plaintiff "has at least sedentary work function" and recommends jobs that involve "[m]ostly sitting," AR at 532-36, despite the fact that Plaintiff's doctor in November 2020

---

[17] *See also Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1327 (10th Cir. 2009) (remanding claim for district court to conduct de novo review, instead of claim administrator, where claim administrator's delay deemed a claim exhausted; "remand to the administrator [may be] an available remedy[,] [] is not always the appropriate one." ) (citing *Quesinberry*, 987 F.2d at 1025 n. 6); *Lyn M. v. Premera Blue Cross*, 966 F.3d 1061, 1069 (10th Cir. 2020) (remanding to district court to determine de novo whether claimant was entitled to benefits); *Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir.2001) ("[A] plan administrator will not get a second bite at the apple when its first decision was simply contrary to the facts."); *Zervos v. Verizon New York, Inc.*, 277 F.3d 635, 648 (2d Cir. 2002) (holding "a remand of an ERISA action seeking benefits is inappropriate where the difficulty is not that the administrative record was incomplete but that a denial of benefits based on the record was unreasonable.") (citation omitted, cleaned up); *cf. DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1176 (10th Cir. 2006) ("[A] retroactive reinstatement of benefits is proper where, but for the plan administrator's arbitrary and capricious conduct, the claimant would have continued to receive the benefits or where there was no evidence in the record to support a termination or denial of benefit.") (cleaned up, citation omitted); *Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009) ("Remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA."); *cf. Wilson v. UnitedHealthcare Ins. Co.*, 27 F.4th 228, 251 (4th Cir. 2022) (remanding to claim administrator where the court lacked a full administrative record because the "ordinary administrative process was short-circuited and the parties were never able to develop their positions").

[18] In its Motion, Reliance points to an October 5, 2021 note from Dr. Yu, AR at 592, in which he opines Plaintiff remains "permanent[ly] stationary [and] . . . permanently disabled" with "[n]o significant change over the past year." [Doc. No. 8] at 6. Reliance hangs its hat on Dr. Yu's statement that he "is disabled from his *previous duties*," *id.* (emphasis added), but this diagnosis comes almost 18 months after the relevant Any Occupation period beginning in May 2020. Far more relevant to Plaintiff's condition during this period is Dr. Yu's letter in November 2020 and the context in which Dr. Yu is making these diagnoses, namely from Plaintiff's primary physician who specifically opined on his inability to perform sedentary work. *Id.* at 186-87. To the extent Reliance questioned the scope of Plaintiff's disability based on the November 2020 diagnosis, it had over a year to follow up before the contested appeal period ran out. It was not until October 14, 2021 that Reliance indicated to Plaintiff it wanted an IME which, as noted earlier, it scheduled outside the appeal window. For deadlines to have meaning, they must be adhered to.

opined nothing had changed in Plaintiff's condition, meaning that his inability to stand, walk, or sit for even an hour in 2019 had not improved. Because Reliance "appears to have disregarded, without justification, [Plaintiff's] treating physicians conclusions" the appropriate remedy in this case is to award benefits to Plaintiff from May 2020 to the present day, without precluding Reliance from terminating Plaintiff's benefits in the future based on an adequate justification. *See Cook v. Liberty Life Assur. Co. of Bos.*, 320 F.3d 11, 25 (1st Cir. 2003) (affirming district court's award of 42 months of back benefits).[19]

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** Plaintiff Motion for Summary Judgment, [Doc. No. 9], be, and the same hereby is **GRANTED** and Defendant's Motion for summary judgment, [Doc. No. 7], be, and the same hereby is, is **DENIED**; and it is further

**ORDERED** that Reliance award Plaintiff benefits in accordance with the Plan from May 28, 2020 through the present and to restore him to on-claim status, subject to the terms and conditions of the Long Term Disability policy; and it is further

**ORDERED** that Plaintiff shall submit any application for attorney's fees and costs within 30 days of the date of this Order.

---

[19] This case contrasts with *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008). In *Gagliano*, Reliance denied a claim in a second termination of benefits letter on a different basis than in its initial termination of benefits letter without providing the opportunity for an administrative appeal of its decision based on those new grounds. *See Gagliano*, 547 F.3d at 234. The Fourth Circuit held that this procedural violation of ERISA did not entitle Gagliano to the substantive relief of an award of benefits. *Id.* at 240 ("[A] defective notice to a plan participant could not create a substantive remedy for a claim that otherwise was not cognizable under the terms of the ERISA plan."). As a basis for its decision to remand, *Gagliano* relied on *Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219 (4th Cir.1998) for the proposition that "a defective notice to a plan participant could not create a substantive remedy for a claim that was otherwise not cognizable under the terms of the ERISA plan." Here, by contrast, the Court is not reviewing and awarding benefits based on a procedural error but on the merits of its application for authorized benefits which has been deemed denied by Reliance and which the Court is reviewing *de novo*. *Id.* The Court does not find Reliance's failure to issue an appeal decision to be "procedural" and Plaintiff is entitled to benefits as the medical evidence demonstrates he is disabled under the "Any Occupation" definition.

The Clerk shall enter judgment in favor of Plaintiff in accordance with Fed. R. Civ. P. 58 and forward a copy of this Order to all counsel of record.


Alexandria, Virginia
August 26, 2022

                                                          Anthony J. Trenga
                                                          United States District Judge